IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RONALD LONG,

      Plaintiff,

vs.                                                   1:21-CV-01175-DHU-LF

SAN JUAN COUNTY DETENTION CENTER,
FNU BIDONY, CO or Detention Officer,
T. WILLSON, Sergeant,
J. RODREGEZ, CO or Detention Officer,
FNU BENCOMO, CO Property Officer,
FNU CHEEKS, CO,
FNU ATENCIO and
FNU JACOBS, Sergeant,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendants' *Martinez* Report and Motion for

Summary Judgment Based on Qualified Immunity, filed on June 15, 2023. Doc. 42. Plaintiff

Ronald Long filed a response on July 7, 2023. Doc. 48. Defendants filed a reply on August 30,

2023. Doc. 49. United States District Judge David H. Urias referred this matter to me for a

recommended disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3). Doc. 31. Having

reviewed the briefing and the relevant law, and being fully informed of the premises, I

recommend that the Court GRANT defendants' motion for summary judgment on all claims as

to all defendants.

## I.    Background

Mr. Long, an inmate at the San Juan County Adult Detention Center ("SJDC") since

March 31, 2020, filed his complaint on December 8, 2021. Doc. 1. Because Mr. Long is a pro se

litigant, the Court construes his complaint liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Construed liberally, Mr. Long states six claims under 42 U.S.C. § 1983 ("Section 1983"). Each claim is based on an alleged violation of Mr. Long's Eighth Amendment rights. In four of these claims, Mr. Long alleges that certain defendants, Corrections Officers employed at SJDC, used excessive force against him:

1. On April 20, 2020, Officer J. Rodriguez grabbed and twisted Mr. Long's penis while he was in the bathroom ("Claim 1"), *see* Doc. 1 at 4;

2. On April 22, 2020, Officer Bidony slammed Mr. Long's face into his bed, injuring his nose and left eye ("Claim 2"), *see id.* at 13;

3. On April 24, 2020, Officer Bencomo put a restraint belt on Mr. Long incorrectly and pulled hard when Mr. Long objected, cutting his wrist and pinching his penis ("Claim 3"), *see id.* at 13–14;

4. On June 4, 2020, Officer Wilson injured Mr. Long's right hand by squeezing it while preventing Mr. Long from opening a door ("Claim 4"), *see id.* at 15–16.

In his remaining two claims, Mr. Long alleges that he has been subjected to unconstitutional conditions of confinement:

1. Mr. Long has had to shower in a room with black mold for more than a year, causing heart issues and trouble urinating ("Claim 5"), *see id.* at 16;

2. Mr. Long was served green beans, to which he is allergic, for two months, causing him to lose fifteen pounds and suffer additional seizures ("Claim 6"), *see* Doc. 1 at 16–17.

On March 14, 2023, the Court ordered defendants to supplement the record by filing a *Martinez* report. Doc. 30. Defendants filed their *Martinez* report on June 15, 2023. Doc. 42. Because Mr. Long does not, in his response, specifically dispute any facts proffered in the

2

*Martinez* report, the Court takes those facts as undisputed. *See* Doc. 48; D.N.M. LR-Civ. 56(b) ("All material facts in the Memorandum will be deemed undisputed unless specifically controverted.").

## II.   Discussion

Defendants assert that they are entitled to summary judgment on each of Mr. Long's claims. Doc. 42. Regarding claims 1, 2, 4, and 5, defendants argue that the Court has no subject-matter jurisdiction because Mr. Long did not exhaust his administrative remedies. *See* Doc. 42 at 41–42, 46, 52–53, 57. Regarding claims 1–4, defendants argue that they are entitled to qualified immunity because none of the conduct Mr. Long has alleged constitutes excessive force, let alone a violation of Mr. Long's clearly established rights. *See id.* at 41–55. Regarding claims 5 and 6, defendants argue that Mr. Long has neither alleged any deprivation sufficiently serious to violate his Eighth Amendment rights nor any facts that show deliberate indifference to his health and safety. *See id.* at 55–64.

Rule 56 of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v.*

*Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its

burden, the non-moving party must show that genuine issues remain for trial. *Id.* In reviewing a

motion for summary judgment, the Court views the evidence and all reasonable inferences from

the evidence in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d

1151, 1156–57 (10th Cir. 2013) (internal quotation marks omitted).

Summary judgment motions involving a qualified immunity defense are decided

somewhat differently than other summary judgment motions. *See Romero v. Fay*, 45 F.3d 1472,

1475 (10th Cir. 1995). "When a defendant raises the qualified immunity defense on summary

judgment, the burden shifts to the plaintiff to meet a strict two-part test." *Nelson v. McMullen*,

207 F.3d 1202, 1206 (10th Cir. 2000). This is a heavy burden for the plaintiff. *Medina v. Cram*,

252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th

Cir. 1995)). "'First, the plaintiff must demonstrate that the defendant's actions violated a

constitutional or statutory right. Second, the plaintiff must show that the constitutional or

statutory rights the defendant allegedly violated were clearly established at the time of the

conduct at issue.'" *Nelson*, 207 F.3d at 1206 (quoting *Albright*, 51 F.3d at 1534–35). The Court

will grant qualified immunity if the plaintiff fails to meet either part of the qualified immunity

test. *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003). The Court need not address the

two-part qualified immunity test in order; it has discretion to decide either prong first. *Pearson v.*

*Callahan*, 555 U.S. 223, 236 (2009). "If, and only if," the plaintiff establishes both elements of

the qualified immunity test does a defendant bear the traditional burden of showing "'that there

are no genuine issues of material fact and that he or she is entitled to judgment as a matter of

law.'" *Nelson*, 207 F.3d at 1206 (quoting *Albright*, 51 F.3d at 1535)). In other words, although

the court "review[s] the evidence in the light most favorable to the nonmoving party, the record

4

must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the

defendants are entitled to qualified immunity." *Medina*, 252 F.3d at 1128 (citation omitted).

> ### A.  Because Mr. Long did not properly exhaust his administrative remedies for claims 1, 2, 4, and 5, the Court must dismiss these claims.

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect

to prison conditions under section 1983 . . . or any other federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a). This provision requires prisoners to *properly* exhaust

administrative remedies before bringing a suit under federal law. *See generally Woodford v. Ngo*,

548 U.S. 81 (2006). In other words, inmates who do not comply with each step of a facility's

grievance procedure permanently forfeit their right to litigate the relevant grievance,

constitutional or otherwise, in federal court. Although the PLRA exhaustion requirement is not

jurisdictional, *see Woodford*, 548 U.S. at 101, courts have no discretion to consider an inmate's

special circumstances: so long as an administrative remedy was "available," a district court must

dismiss claims where an inmate has not exhausted that remedy. *See Ross v. Blake*, 578 U.S. 632,

639, 648 (2016).

Per SJDC's Detainee Grievance Process, Mr. Long was, "barring extraordinary

circumstances," required to file a grievance within seventy-two hours of each alleged incident

and to file an appeal within forty-eight hours of receiving a decision. Doc. 42-12 at 55. Although

these windows are brief, they are enforceable. *See, e.g.*, *Bridgeforth v. Workman*, 410 F. App'x

99 (10th Cir. 2010) (affirming dismissal where plaintiff failed to comply with process that

included three-day deadline); *Williams v. Ortiz*, 937 F.3d 936, 941–42 (7th Cir. 2019) (affirming

dismissal because plaintiff failed to comply with 24-hour deadline). For the incident underlying

5

Claim 1, Mr. Long filed two grievances within the initial deadline (although he did not allege

that his genitals had been touched and/or injured). *See* Doc. 42-2 at 51, 52. Both grievances were

determined to be unfounded; Mr. Long did not appeal either determination and therefore did not

exhaust his remedies for this claim.[1] *Id.* He did appeal a later determination, but because that

grievance was filed in June, well after the deadline, that grievance did not properly exhaust Mr.

Long's remedy. *See id.* at 53. For the incident underlying Claim 2, Mr. Long filed two

grievances, nine and thirty-nine days after the incident respectively, too late to properly exhaust.

Doc. 42-3 at 53, 54. For the incident underlying Claim 4, Mr. Long filed two grievances, the first

of which was filed approximately 92 hours after the incident. Doc. 42-5 at 44–45. Again, these

grievances were too late to properly exhaust. Finally, for the incident underlying Claim 5, it does

not appear that he ever filed a grievance. *See* Doc. 42 at 27–28. There is no evidence that the

grievance process was unavailable to Mr. Long for this claim; to the contrary, the record shows

that Mr. Long regularly utilized the grievance system at SJDC. *See generally* Docs. 42-10, 42-11

(exhaustively cataloging almost 350 pages of grievances). I therefore recommend that the Court

dismiss Claims 1, 2, 4, and 5 because Mr. Long failed to properly exhaust available

administrative remedies as to these claims.

### B. Officer Bencomo's alleged conduct does not constitute excessive force for purposes of the Eighth Amendment (Claim 3).

"[C]laims of excessive force involving convicted prisoners arise under the 8th

Amendment." *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). To show a

violation of the Eighth Amendment, a plaintiff must establish a) that "the alleged wrongdoing

---

[1] Defendants argue that these earlier grievances also were insufficient because Mr. Long did not
identify any individuals responsible for his grievance. *See* Doc. 42 at 41–42. Because Mr. Long
has not exhausted his remedies for this claim, I need not decide this issue.

was objectively harmful enough" to violate the Constitution and b) that the responsible official "use[d] force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (internal quotation marks omitted). Mr. Long's allegations about Officer Bencomo's conduct do not establish either element.

In his complaint, Mr. Long alleges that on April 24, 2020, when Officer Bencomo came to Mr. Long's cell to take him for his hour out of solitary confinement, Officer Bencomo placed the restraint belt around Mr. Long incorrectly, twisting the handcuffs on Mr. Long.[2] Doc. 1 at 13–14. Mr. Long alleges that the twisted handcuffs pinched the base of his penis and cut his wrists, and that when he screamed, Officer Bencomo pulled the belt tighter. *Id.*; *see also* Doc. 48 at 2. He alleges that Officer Bencomo pulled hard on the belt for about 25 seconds, until two other officers intervened. *See* Doc. 34 at 1.

In their *Martinez* Report, defendants attempted to reconstruct the events alleged by Mr. Long. Although they found that the evidence did not perfectly corroborate Mr. Long's allegations, Officer Bencomo did recall an incident roughly consistent with Mr. Long's allegations. *See* Doc. 42 at 17–23. It is unclear exactly when that incident occurred—whether it was on the morning of April 21, 2020, shortly after Mr. Long suffered a seizure, or that evening, when he was taken for his hour out—and consequently unclear whether the mild injury to Mr. Long's penis occurred during that incident or during another time that Mr. Long was restrained

---

[2] Mr. Long timely filed a grievance regarding this event on April 22, 2020, Doc. 42 at 21; Doc. 42-4 at 45, but there is no evidence that he timely appealed the decision that the grievance was unfounded, *see id.* Defendants, however, do not argue that Mr. Long did not properly exhaust his administrative remedies with respect to this claim. *See* Doc. 42 at 48–52. The Court therefore does not address the exhaustion issue with respect to this claim.

that same day. *See id.* at 19–22. The investigation determined, however, that the event did not occur on April 24, 2020, as alleged in Mr. Long's complaint, but must have occurred on April 21 or 22, 2020,[3] as those were the only two dates that Officer Bencomo was on duty during Mr. Long's "hour-outs," and those dates also coincide with Mr. Long's grievances and health service requests. *See* Doc. 42 at 17–23.

Regardless, the evidence shows that Officer Bencomo's use of force was *de minimis* and part of a good faith effort to restrain Mr. Long while removing him from his cell. *See id.* at 22–23; *Redmond*, 882 F.3d at 936. Even Mr. Long acknowledges that any use of force by Officer Bencomo was part of preparations to remove Mr. Long from his cell. Doc. 1 at 13–14. Although Officer Bencomo may have pulled more forcefully on the restraint belt than was strictly necessary, the Tenth Circuit and other circuit courts routinely hold that substantially greater— and less justified—uses of force are "insufficient to support an Eighth Amendment claim." *Marshall v. Milyard*, 415 F. App'x 850, 853 (10th Cir. 2011) (citing cases that found uses of force to be *de minimis*). Further, the medical evidence shows that any injury was extremely minor, Doc. 42 at 21; Doc. 42-4 at 50, which suggests that the amount of force applied was not significant, *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("The extent of injury may . . . provide some indication of the amount of force applied."). Mr. Long's allegations "fall short of what is required to establish a constitutional violation," *id.* at 854, and there is no evidence that Officer Bencomo acted with the purpose of causing harm to Mr. Long, Doc. 42 at 22–23; Doc. 42-4 at 18. I therefore recommend that the Court dismiss this claim with prejudice.

---

[3] Mr. Long acknowledges in his supplement that he may have gotten the date wrong in his original complaint; he states that it was "between 4-21-20 & 4-24-20 I was hurt by [B]encomo in my cell on camera." Doc. 34 at 2.

### C.  Being served green beans for several weeks was not a sufficiently serious deprivation to violate Mr. Long's Eighth Amendment rights (Claim 6).

Although inmates are entitled to "humane conditions of confinement," *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996), only "deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotation marks omitted). To obtain relief, an inmate must show (1) that the alleged deprivation was, objectively, sufficiently serious, and (2) that the responsible prison official acted with deliberate indifference to the inmate's health or safety. *Penrod*, 94 F.3d at 1406. Mr. Long's Claim 6 allegations are contradicted by the evidence and do not come close to showing either element.

Mr. Long alleges that, despite an allergy to green beans, he was fed them in the SJDC cafeteria for most of March and April 2020. Doc. 1 at 16. He alleges that Sergeant Jacobs refused to provide him with other food, despite complaints and multiple grievances, and that he lost fifteen pounds and suffered additional seizures because of malnourishment. *Id.* at 16–17. However, the *Martinez* Report undermines Mr. Long's account and his alleged weight loss.

Mr. Long did not list green beans as an allergy upon his entry to SJDC and at his initial screening on March 31, 2020. Doc. 42 at 29; Doc. 42-7 at 60–61. When Mr. Long complained about being served green beans, Sergeant Jacobs advised him to contact SJDC's medical department to have the allergy listed. Doc. 42 at 32. Mr. Long did not submit a medical service request until April 28, 2020. *Id.* Although the allergy was never verified, an SJDC nurse added green beans to Mr. Long's allergy form only twelve days later. *Id.* at 62–63. Medical records show that Mr. Long weighed 130 pounds on March 31, 2020, during his initial screening at SJDC, and weighed 136 pounds on April 28, 2020. Doc. 42-7 at 60, 79. Sergeant Jacobs, who

supervised officers who pass out trays to inmates, stated that Mr. Long never had an allergic reaction to any of the food he was served, including green beans. Doc. 42 at 32. Once green beans were on his allergy list, Mr. Long no longer received green beans on his tray. *Id.* Further, there is no evidence that an allergic reaction to any food caused or exacerbated Mr. Long's seizures. Doc. 42-7 at 68–87. In short, Mr. Long has not shown that being fed green beans was sufficiently serious, or that any SJCD official acted with deliberate indifference to his health or safety by feeding him green beans.

Although I am not aware of binding precedent, both common sense and comparable findings by other courts persuade me that Mr. Long's allegations would not support an Eighth Amendment violation even were they corroborated. *See Hiler v. Bryant,* 2020 WL 718256, at *5–*6 (W.D. Okla. Jan. 15, 2020) (recommending summary judgment on a similar food allergy claim and listing other cases doing the same) (report and recommendation adopted) (unpublished). I therefore recommend that the Court dismiss this claim with prejudice.

## III.    Conclusion

For the reasons explained above, I recommend that the Court GRANT Defendants'

Motion for Summary Judgment Based on Qualified Immunity (Doc. 42) and dismiss Mr. Long's

complaint with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  In other words, if no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge